IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

| | |
|---|---|
| **ANTHONY QUINN GIBSON** | **PLAINTIFF** |
| **V.** | **CASE NO 2:05CV170** |
| **CAREY ESTES, in his individual and official capacities and Mayor of the City of Rosedale and the CITY OF ROSEDALE, MISSISSIPPI** | **DEFENDANTS** |

### MEMORANDUM OPINION

This cause comes before the court on the defendants' motion [30-1] for summary judgment. The court has reviewed the briefs and submissions and is prepared to rule.

Plaintiff Anthony Gibson was hired as a police officer by the City of Rosedale, Mississippi on January 4, 2000. On July 18, 2001, Mr. Gibson was appointed as the Personnel and File Director of the Rosedale Police Department. His duties included managing, monitoring paperwork, reports, time sheets, police logs, and other similar activities. During Mr. Gibson's tenure as Personnel and File Director, Rosedale did not have a chief of police. The city's police officers reported to Mr. Gibson, who in turn reported to the mayor.

While in his position as Personnel and File Director, Mr. Gibson investigated alleged illegal activity occurring at Club Millennium, a nightclub owned by Carey Estes and his brother Richard Lee Estes. This investigation was conducted in 2003, prior to Mr. Estes being elected as mayor. On a separate occasion while enforcing a curfew imposed on nightclubs, Mr. Gibson arrested Mr. Estes' brother and ticketed Mr. Estes. That night Mr. Estes is alleged to have said that after he was elected mayor that he would have Mr. Gibson terminated. Both Estes brothers

were subsequently let go with a warning.

In February 2004, Carey Estes was elected mayor. At the same time, Mr. Gibson was investigating another brother of Carey Estes, Ronnie Estes, for sexual offenses. Ronnie Estes was also being investigated for alleged involvement in three murders. The parties dispute whether Mayor Estes knew about the investigations. Ronnie Estes was arrested as a result of Mr. Gibson's investigation. He was convicted of sexual assault and is currently incarcerated.

Mr. Gibson alleges that Mayor Estes began engaging in conduct designed to hinder Mr. Gibson's job performance after Mayor Estes' brother's conviction, such as not providing money for maintenance of police department operations. Further, in 2005, Mr. Gibson began investigating Mayor Estes for his involvement in alleged criminal activity at Club Millennium because Mr. Gibson had received complaints that alcohol was being sold to minors at the club. He assigned an undercover informant to observe activities at the club. While undercover, Mr. Gibson's informant videotaped a shooting outside of Mayor Estes' club. Several people were arrested as a result of the investigation, but Mayor Estes was not arrested.

On February 19, 2005, the Rosedale City Council voted to terminate Mr. Gibson, citing poor job performance, disrespect for the authority of his superior, and non-cooperativeness with other agencies. This decision was made in part based on performance evaluations performed by the city council members. The decision to perform performance evaluations was made by Mayor Estes. Prior to his termination, Mr. Gibson had not received any write-ups or warnings regarding his job performance.

ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

The plaintiff has conceded his First Amendment and substantive due process claims. Accordingly, this court will only consider the plaintiff's malicious interference with employment claim.

A claim for malicious interference with employment is the same as asserting a tortious interference with contractual relations claim. *See Roberson v. Winston County, MS*, 2002 WL 449667 (N.D. Miss. 2000). Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. *Morrison v. Mississippi Enter. for Tech.*, 798 So.2d 567, 574 (Miss. Ct. App. 2001). Tortious interference with at-will employment can be the basis of a claim. *Id.* In order to prove tortious interference

3

with a contract, the plaintiff must show: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiff in his lawful business; 3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and 4) that the actual loss occurred. However, a person occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with the principal's contractual relationship with a third person. *Id*.

The defendant acknowledges that an employment relationship was formed between Mr. Gibson and the City of Rosedale, but disputes that Mayor Estes interfered with the relationship. Mayor Estes was acting within the scope of his duties as mayor when he recommended Mr. Gibson's termination. As mayor, Estes occupied a position of responsibility as to the employment of Mr. Gibson; therefore, his actions are privileged unless they were taken in bad faith.

The plaintiff attempts to make a showing of bad faith by noting that prior to Mayor Estes recommending his termination, Mr. Gibson had never received any complaints, write-ups, or written warnings about his job performance. He also observes that his termination occurred four days after his investigation into the mayor's nightclub. The defendant points out that the Rosedale City Council, not the mayor, made the final decision to terminate Mr. Gibson. Mr. Gibson has stated that he did not have any knowledge that the council members were aware of his investigations into Mayor Estes and his brothers, or that his investigations regarding the mayor and his brothers caused the council members to vote in favor of his termination.

While Mr. Gibson has certainly established a likelihood that Mayor Estes may have harbored animosity against Mr. Gibson, this court looks to the Mississippi Supreme Court's

4

analysis in *Levens v. Campbell*, 733 So.2d 753 (Miss. 1999). In *Levens*, Ms. Levens alleged that Cindy Campbell tortiously interfered with her contractual relationship with Memorial Hospital in Gulfport.

Registered nurse Diane Smith contacted Ms. Levens to inform her of a job opening in the pediatric unit. *Levens,* 733 So.2d at 756. Smith told Ms. Levens that the Director of Pediatric Nursing, Amy Sheffield, had asked Smith to call Ms. Levens to see if she would be interested in the position. Memorial Hospital's professional recruiter subsequently hired Ms. Levens as a full time registered nurse. *Id*. After being hired, but before she started work, Ms. Levens received a call from Director of Pediatric Nursing Amy Sheffield stating that she could no longer offer her the job and that there was a hiring freeze in pediatrics; however, Ms. Sheffield stated in her deposition that after Ms. Levens was hired she received a phone call from the Assistant Administrator Faye Anderson. *Id*. Administrator Anderson was concerned that hiring Ms. Levens would cause conflict because Ms. Levens' ex-husband was now in a relationship with Cindy Campbell, the Chief Operating Officer at Memorial Hospital. *Id*. For that reason, Administrator Anderson instructed Amy Sheffield to tell Ms. Levens that there was a hiring freeze. *Id*. at 757.

The Mississippi Supreme Court found that although an employment relationship was formed, the plaintiff had not presented evidence to demonstrate that Chief Operating Officer Campbell had interfered with that relationship. *Id*. at 761. Amy Sheffield asserted that she did not speak with Campbell about Ms. Levens' employment. *Id*. Ms. Sheffield also stated that during her conversations with Assistant Administrator Faye Anderson, Anderson never claimed that Campbell had made any negative comments about Ms. Levens being hired; rather, Anderson

5

made the decision not to hire Ms. Levens in order to circumvent any disruptions in hospital relations. *Id*.

Unlike *Levens* where there was no proof that Chief Operating Officer Campbell took any action to prevent the hiring of Ms. Levens, it is undisputed that Mr. Estes initiated the performance evaluations that led to Mr. Gibson's termination. Further, Mr. Gibson's investigations into activities conducted by Mayor Estes and his brothers, and the allegation that Mayor Estes stated that he would terminate Mr. Gibson once he obtained office, tend to support an inference of bad faith. Therefore, the defendants' motion [30-1] for summary judgment is DENIED.

This the 2nd day of February, 2007.

                                       **/s/ Michael P. Mills**
                                       **UNITED STATES DISTRICT JUDGE**